IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK KELLY, et al., | : | |
|     Plaintiffs | : | No. 1:20-cv-00257 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| GREEN AIR MECHANICAL, LLC, | : | |
|     Defendant | : | |

**MEMORANDUM**

Before the Court is Plaintiffs' motion for default judgment against Green Air Mechanical, LLC ("Defendant"). (Doc. No. 10.) Because Defendant has yet to appear or defend in this action, no opposition to the motion has been filed. For the reasons that follow, the Court will grant the motion and enter default judgment in favor of Plaintiffs and against Defendant.

**I.    BACKGROUND**

On February 13, 2020, Plaintiffs Plumbers and Pipefitters Local No. 520 Pensions Fund; Plumbers and Pipefitters Local No. 520 Annuity Fund; Plumbers and Pipefitters Local No. 520 Health and Welfare Fund; and Plumbers and Pipefitters Local No. 520 Joint Apprenticeship and Training Trust Fund (collectively, the "Funds"), through "Fund Trustees" Frank Kelly, James K. Estabrook, Edward Grimm, and Patrick A. French, initiated the above-captioned action by filing a two-count complaint against Defendant pursuant to Section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145. (Doc. No. 1.)

According to the allegations in the complaint, each Fund is a "multiemployer plan," "employee benefit plan," and "employee benefit pension plan" under various subsections of Section 3 of ERISA, 29 U.S.C. § 1002. (Id. ¶¶ 4, 6, 8, 10.) Each Fund Trustee is the "named fiduciary," "plan administrator," and "plan sponsor" as well as an individual "fiduciary" of the Fund within the meaning of 29 U.S.C. §§ 1102(a) and 1002(16), (21). (Id. ¶¶ 3, 5, 7, 9.) In

addition, the Fund Trustees are fiduciaries of each respective Fund for purposes of 29 U.S.C. § 1002(21) "with respect to the collection of contributions due the Fund and related matters," and they "are authorized to bring this action on behalf of all Trustees of the Funds as organizations." (Id. ¶ 12.) Plaintiffs allege that Defendant is an employer within the meaning of 29 U.S.C. §§ 152(2), (6)-(7) and 1002(5), (11)-(12). (Id. ¶ 13.)

Plaintiffs further allege that Defendant "was [a] party to or agreed to abide by the terms and conditions of a collective bargaining agreement . . . between Local Union 520 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, and the Mechanical Contractors Association of Central Pennsylvania." (Id. ¶ 14.) Pursuant to the terms of the collective bargaining agreement ("CBA") and related Trust Agreements and plan documents of the ERISA Funds,[1] Defendant allegedly agreed to the following:

a. To make full and timely payment on a monthly basis, on or before the 15th day of each month, to the Funds as required by the Trust Agreements and plan documents;

b. To file monthly remittance reports with the Funds detailing all employees or work for which contributions were required under the Agreement;

c. To pay liquidated damages in the amount of Fifteen (15%) Percent of the delinquent amount; interest at the rate of One (1%) Percent of the delinquent amount per month; and all costs of litigation, including attorneys' fees, expended by the Funds to collect any amounts due as a consequence of the Company's failure to comply with its contractual and statutory obligations described in Subparagraphs (a) and (b), above.

(Id. ¶ 16.) Plaintiffs allege that Defendant "failed to timely pay contributions due under the Agreement, Trust Agreements and plan documents for the period of November[] 2019 through

---

[1] Regarding Trust Agreements and other documents, Plaintiffs allege that Defendant "is subject to and has agreed to abide by the terms of the Amended and Restated Agreements and Declarations of Trust of the Funds . . . made between certain employers and employee representatives in an industry(ies) affecting interstate commerce to promote stable and peaceful labor relations, and the plan documents for the ERISA Funds." (Id. ¶ 15.)

2

the present, in violation of 29 U.S.C. §1145."[2]  (Id. ¶ 18.)  Plaintiffs seek contributions due to the funds, liquidated damages, interest, attorneys' fees, and costs incurred in this action.  (Id. ¶ 20.)

Plaintiffs filed their complaint on February 13, 2020, and summons was issued the same day.  (Doc. Nos. 1-2.)  On March 10, 2020, about thirty-five (35) days after process was served (Doc. No. 4), Plaintiffs filed a request for entry of default (Doc. No. 5).  The Clerk of Court entered default the same day based on Defendant's "failure to answer, plead or otherwise defend" this action. (Doc. No. 6.)  After several months of silence from Defendant, the Court ordered Plaintiffs to file a report as to the status of this action.  (Doc. No. 9.)  In response, Plaintiffs filed their motion for default judgment and brief in support thereof.  (Doc. Nos. 10-11.)

## II.   LEGAL STANDARD

Default judgments are governed by a two-step process set forth under Rule 55 of the Federal Rules of Civil Procedure.  An entry of default by the Clerk of Court under Rule 55(a) is a prerequisite to a later entry of a default judgment under Rule 55(b). See 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (3d ed. 2007) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a).").  Once the Clerk of Court has entered a default, the party seeking the default may then move the Court to enter a default judgment under Rule 55(b)(2).

---

[2] In Plaintiffs' brief in support of their motion for default judgment, they allege that Defendant continued to fail to provide contributions to the Funds from "February 2020 through and including April 2020." (Doc. No. 11 at 5.)  Because the prayer for relief in Plaintiffs' complaint includes "any additional contributions due since the filing of this action" along with liquated damages, interest, and fees and costs stemming therefrom (Doc. No. 1 at 9), "the Court finds that the [c]omplaint provided [D]efendant with sufficient notice that [P]laintiffs would seek unpaid contributions, unpaid contributions that accrue after the filing of the [c]omplaint, interest that has accrued both before and subsequent to the filing of the [c]omplaint on the unpaid contributions due to [P]laintiffs, and liquidated damages."  See Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Engineers Local 14-14B, AFL-CIO v. Integrated Structures Corp., No. 12-cv-6354, 2013 WL 4095651, at *7 (E.D.N.Y. Aug. 13, 2013).

Entry of default does not entitle a claimant to default judgment as a matter of right. See 10 James Wm. Moore et al., Moore's Federal Practice § 55.31 (Matthew Bender ed. 2010). Rather, decisions relating to the entry of default judgments are committed to the sound discretion of the district court. See Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987).

Three factors control the exercise of the Court's discretion in assessing whether default judgment should be granted following the entry of default: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." See Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)). If, however, the defendant has been properly served but fails to appear, plead, or defend an action, a court may "enter a default judgment based solely on the fact that the default occurred," without considering the Chamberlain factors. See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 177 n.9 (3d Cir. 1990).

"A finding that default judgment is appropriate, however, is not the end of the inquiry." Martin v. Nat'l Check Recovery Servs., LLC, No. 12-1230, 2016 WL 3670849, at *1 (M.D. Pa. July 11, 2016). Prior to entering a default judgment, the Court must also determine whether the "unchallenged facts constitute a legitimate cause of action." See Wright, et al., supra, at § 2688; Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd., 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) (noting that, "before granting a default judgment," courts must "ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law" (citations omitted)). In conducting this inquiry, "the well-pleaded, factual allegations of the complaint . . . are accepted as true and treated as though they were established by proof." See E. Elec. Corp. of N.J. v. Shoemaker Const. Co., 652 F. Supp. 2d 599,

4

605 (E.D. Pa. 2009) (citation omitted).  While the Court must accept as true the well-pleaded factual allegations of the complaint, the Court need not accept the moving party's factual allegations or legal conclusions relating to the amount of damages.  See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

**III.    DISCUSSION**

Having reviewed the record, including Plaintiffs' complaint, motion, supporting brief, exhibits, and accompanying declarations, the Court finds that entry of default judgment against Defendant and in favor of Plaintiffs is appropriate.[3]  As an initial matter, the Court observes that Plaintiffs' unchallenged allegations in the complaint, taken as true, state a legitimate cause of action under 29 U.S.C. §§ 1132 and 1145.  Section 1132 authorizes a plan fiduciary to sue an employer who fails to make contributions to a multiemployer plan under the terms of a collective bargaining agreement in violation of Section 1145.[4]  If judgment is awarded in favor of the plan under Section 1145, the "[C]ourt shall award the plan" the following:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of--

    (i) interest on the unpaid contributions, or

    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

---

[3]  In their motion for default judgment, Plaintiffs move for default judgment as to the first count of their complaint and seek dismissal of their second count (i.e., breach of contract), which was included only as an alternative basis for liability.  (Doc. No. 11 at 8.)

[4]  Section 1145 provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.

5

>   (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
>   (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).  Interest "on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26."  Id. Here, Plaintiffs have established a legitimate cause of action by alleging that Defendant failed to make contributions to the Funds in accordance with the CBA.  See id.

In addition, Plaintiffs have offered support for its claim of a sum certain of $96,112.65 in the relevant documents accompanying its complaint and motion for default judgment. Specifically, Plaintiffs have provided the declaration of David Puchalski, a Plan Manager and Regional Manager for Benesys, Inc. (Doc. No. 11-2 at 3.)  The Fund Trustees retained Benesys to act as administrator for the Funds.  (Id.)  Puchalski explains that, for the period from November 2019 through April 2020, Defendant was obligated but failed to provide contribution reports and make payments to the Funds on a monthly basis.  (Id. at 4-6.)  In such circumstances, the Fund Trustees are authorized to project the amount by which Defendant is in delinquency for failing to make contributions, as follows:

>   [W]hen an employer is two or more months delinquent in contribution payments and fails to submit a contribution report for a delinquent month, the [Fund] Trustees may project as the amount of the delinquency the greater of (a) the average of the monthly payments actually made by the Employer for the last three (3) months for which the payments were made, or (b) the average of monthly payments made by the Employers for the last twelve (12) months for which payments were made.

(Id. at 5.)  In this case, Puchalski used contribution reports submitted by Defendant for the August to October 2019 work months to estimate the amount of contributions owed for November 2019 through April 2020.  (Id.)  The amount he arrived at is $78,351.84.  (Id.)  From that amount, Puchalski calculated the liquidated damages and interest by multiplying the amount

of contributions in delinquency by fifteen percent (15%) for the liquidated damages (for a total of $11,752.78) and by one percent (1%) per month for the interest (for a total of $4,370). (Id. at 5-6.) Charts attached as Exhibit 7 to Puchalski's declaration reflect the calculations he used to arrive at these numbers and the total amount of damages sought, including attorneys' fees and costs,[5] for a total of $96,112.65. (Id. at 68-70.) Based on these calculations, the Court finds that Plaintiffs have sufficiently substantiated the judgment amounts to which they are entitled.

Furthermore, the three Chamberlain factors weigh in favor of entering default judgment against Defendant. First, Plaintiffs will be prejudiced if the Court declines to enter default judgment because Plaintiffs are unable to proceed with the action due to Defendant's failure to respond and have no other means of recovering against Defendant. See Broad. Music, Inc., 2014 WL 4059711, at *2 (stating that the plaintiffs "w[ould] be prejudiced . . . by their current inability to proceed with their action due to [the] [d]efendants' failure to defend"). Second, Defendant has not asserted a meritorious defense to Plaintiffs' claims through the filing of an answer or other responsive pleading to the complaint, or through the filing of a response to Plaintiffs' motion for default judgment. Accordingly, there is nothing from which to conclude that Defendant has a viable, litigable defense. See Laborers Local Union 158 v. Fred Shaffer Concrete, No. 10-cv-1524, 2011 WL 1397107, at *2 (M.D. Pa. Apr. 13, 2011). Third, the Court cannot discern from the record any excuse or justification for Defendant's default apart from Defendant's own culpability. Indeed, Defendant has failed to enter an appearance or file a timely answer to the complaint and has offered no reasons for its failure to do so. "A defendant's default, or its decision not to defend against allegations in a complaint, may be

---

[5] Plaintiffs have provided the declaration of Andrew Kelser, Esq., according to which $1,637.50 is owed to his firm as a result of attorneys' fees and other costs related to this action. (Doc. No. 11-2 at 72-73.)

grounds for concluding that the defendant's actions are willful." Innovative Office Prods., Inc. v. Amazon.com, Inc., No. 10-cv-4487, 2012 WL 1466512, at *3 (E.D. Pa. Apr. 26, 2012).  In the absence of any excuse or justification for Defendant's failure to participate in this litigation, the Court is compelled to conclude that Defendant's failure to participate in this litigation is the result of its culpable conduct.  See Laborers Local Union 158, 2011 WL 1397107, at *2.  Accordingly, the Court is satisfied that the Chamberlain factors counsel in favor of entering default judgment in favor of Plaintiffs and will therefore grant Plaintiffs' motion for default judgment.

## IV. CONCLUSION

Based on the foregoing, the Court will grant Plaintiffs' motion for default judgment. (Doc. No. 10.)  An appropriate Order follows.